IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CALVIN TRICE, ) | |
| ) | Case No. 06 cv 6687 |
| Petitioner, ) | |
| ) | Judge Virginia M. Kendall |
| v. ) | |
| ) | |
| DONALD HULICK, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Calvin Trice ("Trice") filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254, wherein he complains that the trial court improperly admitted an anonymous 911 tape recording into evidence, the State used coerced testimony and withheld witness information, and his defense counsel rendered ineffective assistance at trial. Respondent Warden Donald Hulick ("Hulick") moves to dismiss the petition as time-barred pursuant to 28 U.S.C. § 2244(d)(1)(A). On January 10, 2007, this Court questioned the timeliness of Trice's petition under 28 U.S.C. § 2244(d)(1). The Court, pursuant to Rule 4 of the Rules Governing Section 2254 Cases, ordered Trice to show good cause in writing as to why the petition should not be dismissed as time-barred, which he filed on February 6, 2007. In response, Hulick filed the instant motion. For the reasons set forth below, Hulick's motion to dismiss is granted and Trice's petition is dismissed with prejudice.

## PROCEDURAL BACKGROUND

On May 1, 1987, Trice was convicted of first degree murder of police officer Rudolph

1

Schaeffer, armed robbery, and concealment of homicidal death.[1] (Pet. 1; Resp't Ex. A, Cert. Stmt. 4; *People v. Trice*, 577 N.E.2d 1195, 1197 (Ill. App. Ct. 1991).) On January 14, 1991, the conviction was affirmed on direct appeal by the Illinois Appellate Court. *Trice*, 577 N.E.2d at 1205. Trice then filed a petition for leave to appeal ("PLA") with the Illinois Supreme Court, which was denied on December 4, 1991. (Resp't Ex. C, PLA in *People v. Trice*, No. 72669; Resp't Ex. D, *People v. Trice*, 584 N.E.2d 138 (Table) (Ill. Dec. 4, 1991).) Trice did not file a petition for writ of *certiorari* to the United States Supreme Court. Allowing him the time within which he could have filed such a petition pursuant to 28 U.S.C. § 2244(d)(1)(A), Trice's criminal judgment became final on March 4, 1992, 90 days after judgment and the date on which his time for filing a petition for *certiorari* expired. *Anderson v. Litscher*, 281 F.3d 672, 675 (7th Cir. 2002).

On January 17, 2001,[2] Trice filed a petition for post-conviction relief in the Circuit Court of Cook County, Illinois, which was dismissed on April 13, 2001. (Resp't Ex. A, Cert. Stmt. 5; Resp't Ex. E, Pet. Relief 1; Resp't Ex. F, April 13, 2001 Order.) The Illinois Appellate Cout affirmed dismissal on December 13, 2002 and, on June 4, 2003, the Illinois Supreme Court denied Trice's PLA. (Resp't Ex. G, Dec. 12, 2002 Order; Resp't Ex. H, PLA in *People v. Trice*; Resp't Ex. I, *People v. Trice*, 792 N.E.2d 313 (Table) (Ill. June 4, 2003).) Prior to the denial of this PLA, Trice also filed a petition for relief from judgment on May 28, 2003. (Pet. 4; Resp't Ex. A, Cert. Stmt. 6.) The trial court dismissed the petition on July 28, 2005 and Trice did not appeal. (Pet. 4; Resp't Ex.

---

[1] The Court takes judicial notice of matters in the public record that are attached to the parties' briefs. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

[2] As Hulick correctly notes, this is not the date that Trice's petition for post-conviction relief was actually filed in the Circuit Court of Cook County, but rather, the date on which Trice signed the petition and the petition was notarized. (Resp't Ex. E, Pet. Relief 1.) To give Trice "the maximum benefit of doubt under the statute of limitations," Hulick considers the date of signature and notarization as the date of filing. *See Jones v. Bertrand*, 171 F.3d 499, 502 (7th Cir. 1999). Whether Trice filed the petition on January 17 or January 24 does not affect the Court's conclusion. Thus, the Court adopts Hulick's characterization and will consider January 17, 2001 as the date of filing.

A, Cert. Stmt. 9.) On November 28, 2006, Trice filed the instant petition.[3] (Pet. 8.)

## DISCUSSION

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), "a 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). The one-year period runs from the latest of several dates, including: (1) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (2) the date on which a state-created impediment to filing that was either unconstitutional or in violation of the laws of the United States was removed; (3) the date on which a new constitutional right was recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. *Id.* If the petitioner's conviction became final before the AEDPA's enactment on April 24, 1996, the petitioner is given a one-year grace period for filing a federal habeas petition, that is, April 23, 1997. *Jones v. Bertrand*, 171 F.3d 499, 500 (7th Cir. 1999) (*citing Lindh v. Murphy*, 96 F.3d 856, 866 (7th Cir. 1996) (en banc)*, rev'd on other grounds,* 521 U.S. 320, 138 L. Ed. 2d 481, 117 S. Ct. 2059 (1997)). Additionally, "the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted" toward the one-year statute of limitations. 28 U.S.C. § 2244(d)(2).

---

[3] The petition was received and filed by the court clerk on December 4, 2006. (Pet. 1.) According to notice of filing attached to Trice's habeas petition, however, Trice signed, filed, and placed copies of the petition in the prison mailing system on November 28, 2006. (Pet. 7; Pet. Notice of Filing.) A petitioner's habeas petition is deemed filed on the day he gave it to prison authorities to place in the prison mailing system, not the date on which it was received by the court clerk. *See Jones,* 171 F.3d at 502. Thus, the Court considers the instant petition filed as of November 28, 2006.

In the instant case, Trice's conviction became final on March 4, 1992, before the effective date of the AEDPA. Because his conviction became final before enactment of the AEDPA, Trice was required to file his petition by April 23, 1997 under § 2244(d)(1). As noted above, Trice filed a post-conviction petition for relief on January 17, 2001, which remained pending until the Illinois Supreme Court denied his PLA on June 4, 2003. Prior to this denial, Trice also filed a petition for relief from judgment on May 28, 2003, which remained pending until the trial court's dismissal on July 28, 2005. Thus, under 28 U.S.C. § 2244(d)(2), the limitations period was tolled from January 14, 2001 through July 28, 2005. However, this does not account for the period between April 24, 1996 and January 17, 2001, which would make any petition filed after April 23, 1997 untimely. Nor does it account for the time lapse between July 29, 2005 and November 28, 2006. Recognizing these gaps, Trice submits the following four arguments to support his position that the petition is not time-barred: (1)Trice is entitled to equitable tolling; (2) the petition is timely under 28 U.S.C. § 2244(d)(1)(B); (3) the petition is timely under 28 U.S.C § 2244(d)(1)(C); (4) the time-barred petition is subject to the "actual innocence" exception.

I. <u>Equitable Tolling</u>

Trice initially contends that he is entitled to equitable tolling with respect to both of the time lapses unaccounted for intervals. A court may toll the limitations period under the doctrine of equitable tolling if the petitioner can establish that: (1) he has been pursuing his rights diligently; and (2) some extraordinary circumstance far beyond his control stood in the way of timely filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 419, 125 S. Ct. 1807, 161 L. Ed. 2d 669 & n.8 (2005); *Modrowski v. Mote*, 322 F.3d 965, 967 (7th Cir. 2003). While the Seventh Circuit has acknowledged that equitable tolling may apply to § 2244, the principle is only applied in exceptional

4

circumstances. *Anou Lo v. Endicott*, 506 F.3d 572, 576 (7th Cir. 2007); *see also Johnson v. Chandler*, 224 Fed. Appx. 515, 519 (7th Cir. 2007) ("[W]e have yet to identify a factual circumstance so extraordinary that it warrants equitable tolling."). With respect to the April 1996 through January 2001 period, Trice claims that he is entitled to equitable tolling because his attorney held his legal papers, but failed to file any petitions on Trice's behalf. With respect to the July 2005 through November 2006 period, Trice maintains that he did not have access to his legal documents because prison officials falsely accused Trice of committing certain prison infractions that resulted in Trice's placement in segregation. In addition, Trice asserted that prison officials subsequently denied him access to legal materials when they effected two different prison transfers.

Setting aside the issue of whether Trice "diligently" pursued his rights, as required by *Pace*, Trice's allegations regarding the 1996 through 2001 period do not rise to the level of "extraordinary circumstances" warranting equitable tolling. According to Trice, in November 2006, Trice gave his attorney all his legal documents. (Pet'r Mem. Show Cause 2-3.) For the next three and one-half years, Trice's attorney held the documents, but failed to file any petitions on Trice's behalf. (Pet'r Mem. Show Cause 3.) Trice did not reacquire the documents until June 2000, when Trice's brother went to the attorney's office, obtained the documents, and sent them to Trice. (*Id.*) That Trice's attorney failed to act on Trice's behalf is insufficient to trigger equitable tolling. "Attorney misconduct, whether labeled negligent, grossly negligent, or willful, is attributable to the client." *Modrowski*, 322 F.3d at 968. Nor is Trice's allegation that his counsel retained Trice's legal documents persuasive. Trice, as the petitioner, "bears the ultimate responsibility for [his] filings." *Id.* Trice had an obligation to not only "vigilantly oversee the actions of [his attorney]," but also "to take matters into [his] own hands," if necessary. *Id*. There is no indication that Trice attempted to

5

retrieve his documents prior to June 2000 or that counsel continued to withhold the documents despite a request to return the materials. There is also no indication that Trice took any affirmative acts in support of his petition. Rather, Trice simply asserts he is entitled to equitable tolling because his attorney retained the documents until Trice's brother retrieved them. This Court will not treat Trice's lawyer as a source of interference. *See Johnson v. McBride*, 381 F.3d 587, 589-90 (7th Cir. 2004) ("No one interfered with Johnson's ability to pursue collateral relief in a timely fashion. He wants us to treat his own lawyer as the source of interference, but lawyers are agents. Their acts (good and bad alike) are attributed to the clients they represent. The sixth amendment creates an exception to this principle for criminal prosecutions. Once trial and direct appeals have run their course, however, neither the sixth amendment nor federal law guarantees effective assistance of counsel for collateral proceedings, not even in a capital case.") (internal citations omitted). Trice has not established extraordinary circumstances entitling him to equitable tolling of the limitations period. Accordingly, Trice's petition, filed after April 23, 1997, is untimely under 28 U.S.C. § 2244(d)(1)(A).

Even if the statute of limitations remained equitably tolled due to the actions of Trice's attorney, Trice's petition would still be untimely 28 U.S.C. § 2244(d)(1)(A). As noted above, Trice did not have access to his legal documents from November 1996 through June 2006. Under the AEDPA, the limitations period began to run on April 23, 1996. Thus, at least six months, or 184 days, elapsed between initiation of the limitations period (April 23, 1996) and initiation of the requested equitable tolling period (November 1, 1996). According to Trice, equitable tolling of the limitations period ceased when he reacquired his documents in June 2000. Thus, he had six months from receipt of the documents to file his habeas petition or otherwise toll the limitations period, or

6

December 2000. Trice filed his initial petition for post-conviction relief on January 17, 2001. Thus, under a generous reading of the facts, at least another 200 days (July 1, 2000 through January 16, 2001) elapsed before the limitations period was subsequently tolled. Neither party has provide this Court with facts indicating that the limitations period was tolled, through statutory or equitable principles, from July 1, 2000 through January 16, 2001. Thus, even if Trice is entitled to equitable tolling while counsel retained Trice's legal documents, Trice's petition would remain time-barred.

For the reasons stated above, the instant petition is not subject to equitable tolling for the April 1996 through January 2001 period. Under § 2244(d)(1)(A), Trice was required to file his petition by April 23, 1997. In light of this determination, the Court need not address Trice's arguments in support of equitable tolling with respect to July 2005 through November 2006.

II.  Impediment Created By State Action (§ 2244(d)(1)(B))

Under § 2244(d)(1)(B), if state action "in violation of the Constitution or laws of the United States" creates an "impediment to filing an application," the one-year clock does not begin to run until the impediment is removed, "if the applicant was prevented from filing by such State action." 28 U.S.C. 2244(d)(1)(B). Trice contends that his attorney's retention of Trice's legal documents from November 1996 through June 2000 created an "impediment" to filing his application. Section 2244(d)(1)(B) requires that the impediment be placed by the State. The Court is not aware of any facts that would allow it to impute the actions of his privately retained attorney to the State. Thus, § 2244(d)(1)(B) did not toll the limitations period from November 1996 through June 2000.[4]

---

[4] Although not in his response to Hulick's Motion to Dismiss, Trice, in his Showing of Cause Why His Habeas Petition Should Not Be Dismissed As Time-Barred, also submits that Trice's inability to access his legal documents due to his segregation and prison transfers constitutes an "impediment to filing." Under § 2244(d)(1)(B), the impediment must "prevent" the applicant from filing his petition. As discussed below, Trice was required to filed his petition by April 23, 1997 under § 2244(d)(1). The alleged impediment posed by prison officials came into existence after the one-year limitations period had expired under § 2244(d)(1)(A). Trice presents no facts from which one could infer that the

III.     New Constitutional Right (§ 2244(d)(1)(C))

In light of the foregoing analysis, it appears that Trice's petition, subject to one exception (discussed below), is untimely unless Trice can establish circumstances that would justify starting the running of the limitations period at a later date. Trice attempts to do just that, arguing that, under § 2244(d)(1)(C), the limitations period should be measured from 2004 rather than 1996. Section 2244(d)(1)(C) provides that, in cases where the petitioner is asserting a newly recognized constitutional right, the one-year limitations period for raising a claim based on that right should be measured from "the date on which the constitutional right asserted was initially recognized by the Supreme Court." In this case, Trice maintains that the trial court denied Trice his Sixth Amendment right to confrontation by admitting into evidence an anonymous 911 call and that this right was initially recognized by the Supreme Court in *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354; 158 L. Ed. 2d 177 (2004). In *Crawford*, Supreme Court held that a court may admit "testimonial" hearsay against a criminal defendant only if the declarant is unavailable and the accused had a prior opportunity to cross-examine the declarant. 541 U.S. at 59. To allow otherwise would violate a criminal defendant's Sixth Amendment rights under the Confrontation Clause. *Id.* Assuming, as Trice does, that *Crawford* applies to the trial court's decision regarding the 911 call, this would not reset the statute of limitations. Section 2244(d)(1)(C) expressly requires that the new right be made retroactively applicable to cases on collateral review. The rule announced in *Crawford*, however, does not apply retroactively to cases on collateral review. *Whorton v. Bockting,* 549 U.S. __, 127

---

State created an impediment that prevented Trice from filing his application between April 1996 and March 2006. Thus, an alleged March 2006 impediment could not toll the limitations period. *See, e.g., Kimbrough v. Knowles*, No. C 03-1968 JSW (PR), 2006 U.S. Dist. LEXIS 94008, at *12 (N.D. Cal. Dec. 19, 2006) ("It would defy logic for § 2244(d)(1)(B) to re-commence the statute of limitations ordinarily in place under § 2244(d)(1)(A) when the impediment did not even exist until after more than a year had passed.").

S. Ct. 1173, 167 L. Ed. 2d 1 (2007). Thus, Trice cannot rely on § 2244(d)(1)(C) to start the limitations clock at a later date.

IV.     Actual Innocence Exception

Finally, Trice contends that the Court must accept his untimely petition because he is actually innocent and, therefore, the application of the statute of limitations in § 2244(d) to bar his petition would result in a fundamental miscarriage of justice. Although a showing of "actual innocence" may be a gateway that allows a federal court to consider the merits of an otherwise procedurally defaulted claim, *see Schlup v. Delo*, 513 U.S. 298, 327-29, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995), "actual innocence is not a freestanding exception to [§ 2244(d)]." *Araujo v. Chandler*, 435 F.3d 678, 682 (7th Cir. 2005); *see also Johnson*, 224 Fed. Appx. at 519 (*citing Araujo v. Chandler*, 435 F.3d 678, 682 (7th Cir. 2005)) (actual innocence is not a freestanding exception). An actual innocence claim is subject to § 2244(d)(1)(D). *Escamilla v. Jungwirth*, 426 F.3d 868, 872 (7th Cir. 2005). Thus, a petition may bring an otherwise untimely claim only if he shows that "the factual predicate for the claim could not have been discovered earlier, *and* the prisoner shows actual innocence by clear and convincing evidence." *Id.* The statute of limitations runs from the time when the petitioner could have discovered, through the exercise of due diligence, the facts giving rise to his claim, not when the petitioner actually obtains the evidence supporting the claim. 28 U.S.C. § 2244(d)(1)(D); *Escamilla*, 426 F.3d at 871. Actual innocence without a newly discovered claim "does nothing at all." *Escamilla,* 426 F.3d at 872.

Having concluded that Trice's actual innocence argument is dependant upon § 2244(d)(1)(D), the Court must first address which claims would survive under the "new factual predicate" analysis. *See Pace*, 544 U.S. at 416 (courts must employ a claim-by-claim analysis when

9

§ 2244(d)(1)(D) is used to trigger the limitations period.). In the present case, Trice presents four claims. First, he was deprived of his due process and equal protection rights because the trial court's admitted an anonymous 911 tape into evidence. Second, he was convicted based upon manufactured testimony that resulted from prosecutorial misconduct. Third, defense counsel provided ineffective assistance when he failed to disclose evidence to the State during his trial, which resulted in the exclusion of a letter written by witness Angelia Lathan ("Lathan"). Fourth, the State violated his due process and equal protection rights by failing to provide Trice with information regarding the location of the State's witness prior to trial. Neither the first, third, or fourth claim qualifies for § 2244(d)(1)(D) treatment. Trice challenged the trial court's decision to admit an anonymous 911 call and the testimony of unavailable witnesses during direct appeal of the conviction. (*See* Pet. at 2(a); *Trice,* 577 N.E.2d at 974-77; Resp't Ex. C, PLA in *People v. Trice*, No. 72669.) Evidence also indicates that he knew of his attorney's failure to disclose Lathan's letter, as Trice challenged the trial court's exclusion of the letter on direct appeal and the appellate court directly addressed defense counsel's failure to disclose the letter before affirming Trice's conviction in 1991. *See Trice*, 577 N.E.2d at 978. Thus, § 2244(d)(1)(D) cannot stave off dismissal of Claims I, III, and IV, the Court grants Hulick's motion to dismiss as to the three claims.

Nor does Claim II survive under § 2244(d)(1)(D). Trice's second claim, as well as his actual innocence claim, rests on evidence that he maintains demonstrates that he was falsely accused and subsequently convicted based on false testimony from witnesses who were coerced and threatened by police officers and state's attorneys. In support of this claim, Trice submits three affidavits and one letter. In the first affidavit, notarized and dated July 17, 2001, witness Elwin Ward recants his testimony and states that he testified falsely before the grand jury and at trial as a result of police

intimidation. (Pet'r Response, Ward Aff.) In the second affidavit, notarized and dated November 5, 2003, Henderson asserts that he falsely implicated himself and Trice in the murder and robbery during a police interrogation as a result of police intimidation. (Pet'r Response, Henderson Aff.) The third is an affidavit from Lathan in which Lathan asserts that the police forced her, through threats and other intimidation, to provide false grand jury and trial testimony that implicated Trice. (Pet'r Response, Lathan Aff.) The affidavit is not signed, dated, or notarized. In addition to the three affidavits, Trice also submits a letter dated March 7, 1986 written by Lathan to. In the letter, Lathan recants her custodial statements and her grand jury testimony. (Pet'r Response, Lathan Letter.) She also admits that the allegedly false custodial statements and grand jury testimony, which implicated Trice in Schaeffer's murder, were the result of police coercion. (*Id.*)

Henderson's affidavit is not newly discovered evidence. Henderson, who was tried along with Trice in a dual-jury proceeding, testified on his own behalf that the statements he previously made were false and elicited as a result of police coercion. *See Trice*, 577 N.E.2d at 1198. Nor can Trice rely on the remaining evidence to reset the limitations clock under § 2244(d)(1)(D). With respect to Ward, Hulick correctly notes that the affidavit is dated July 17, 2001 - over thirteen years after his conviction and five years prior to the filing of the instant petition. The Court also notes that, in his affidavit, Ward states that, in June 1986, he made a tape upon his own free will in which he stated that he had no knowledge regarding the shooting he testified to before the Grand Jury. (Ward Aff. 1.) The affidavit also indicates that, when asked about the tape at trial, Ward lied and stated that he made the tape because he was threatened by Trice's brother. (*Id.*) With respect to Lathan, Trice received Lathan's March 7, 1986 letter (in which she recanted and admitted that she perjured herself as a result of police coercion) prior to his criminal trial in 1987. Indeed, Trice

11

attempted unsuccessfully to introduce the March 7, 1986 letter during his criminal trial and subsequently challenged the trial court's decision to exclude the letter in his direct appeal. *See Trice*, 577 N.E.2d at 1197, 1201.

Trice's evidence affirmatively establishes that Trice knew "the factual predicate of [his] claim" at the time of his criminal trial in 1987. Trice's "claim" is that his conviction is based on false, coerced testimony. The "factual predicate" for the claim is what happened to Henderson, Lathan, and Ward. As a result of Lathan's letter, Trice knew before his trial how the police treated Lathan and Henderson and that the two had provided false statements as a result of the alleged coercion. Indeed, Trice attempted to introduce Lathan's letter at his trial and appealed the trial court's decision to exclude the letter. He also heard Henderson testify at trial that the statements he previously made were false and elicited as a result of police coercion. In light of his awareness of the police's actions and the coerced testimony at the time of his trial, Trice cannot now argue that the factual predicate for Claim II could not have been discovered through due diligence and that, as result, his November 2006 filing is timely. *See Escamilla*, 426 F.3d at 871 ("As a matter of law, new evidence supporting a claim actually made at or before trial cannot form the basis of a new period under § 2244(d)(1)(D). Section 2244(d)(1)(D) does not restart the time when corroborating evidence becomes available; if it did, then the statute of limitations would fail in its purpose to bring finality to criminal judgments, for any prisoner could reopen the judgment by locating any additional fact."). Nor does he even attempt to do so.

Because Trice had knowledge of the factual predicate for Claim II at the time of his criminal trial in 1987, Claim II is subject to the same limitations period as Claims I, III, and IV under § 2244(d)(1). Because § 2244(d)(1) required Trice to file Claim II by April 23, 1997, Claim II is also

untimely and, therefore, dismissed with prejudice.

## **CONCLUSION AND ORDER**

For the reasons stated herein, Hulick's Motion to Dismiss Petition For Writ of Habeas Corpus As Time-Barred is granted . Trice's petition is dismissed with prejudice.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: March 31, 2008